**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

LOCATEPLUS HOLDINGS
CORPORATION,

          Plaintiff,

          v.

STEVE SILVA,

          Defendant.

Civil Action No.
04-11705-RGS

## MOTION TO STRIKE PORTIONS OF STEVE SILVA'S AFFIDAVIT AND MEMORANDUM IN SUPPORT

NOW COMES the plaintiff in the above-captioned action, LocatePlus Holdings Corporation ("LocatePlus"), and hereby moves that certain portions of the affidavit of defendant, Steve Silva ("Silva"), be stricken as inadmissible.

As set for in detail below, Silva, a former executive of LocatePlus, has impermissibly submitted as evidence in this proceeding communications that are protected by the attorney-client privilege between the undersigned counsel and LocatePlus. The privilege belongs to LocatePlus, not Silva. Silva therefore cannot waive that privilege and such communications cannot be used as evidence in support of Silva's opposition to LocatePlus's motion for a preliminary injunction (or in any other proceeding).

As grounds for this motion, LocatePlus further states:

**Background:**

1.    In this action, LocatePlus has moved for a preliminary injunction that would, among other things, enjoin Silva from working for his current employer, ChoicePoint Inc., or any other competitor of LocatePlus for the period set forth in the relevant agreement.

2.    This Court has scheduled a hearing on LocatePlus's motion for a preliminary injunction for Monday, August 9, 2004 at 11:00 a.m.

3.    On Friday afternoon, August 6, 2004, defendant served the undersigned with Silva's opposition to LocatePlus's motion for a preliminary injunction.  Annexed to that opposition was the affidavit of Silva (on file with the Court).

**Privileged Statements:**

4.    Paragraph 9 of Silva's affidavit states the following:

Until after I had announced my resignation in July, 2004, no one at LocatePlus ever mentioned a non-disclosure/non-competition agreement again.  I did, however, have a conversation in early 2004, approximately six months before my resignation, with LocatePlus counsel Mark Whitney about the fact that I never signed the company's non-disclosure/non-compete agreement.  The conversation occurred after an investigator had come to the Beverly office to conduct an on-site investigation arising out of a discrimination lawsuit that had been filed against

- 2 -

LocatePlus by a former employee names Nicholas
Kokoras.  I was one of the employees interviewed by
the investigator.  After the investigator had left,
Mr. Whitney and I spoke in the executive conference
room and I asked him how he thought the investigation
had gone.  After telling me he thought it had gone
well, we began talking about other human resources
issues at LocatePlus.  Mr. Whitney told me that "this
is why you need a real HR department" and that he had
gone to other executives at the company, including Mr.
Latorella, and told them they needed to adopt certain
employment policies or procedures and possibly an
employee handbook, but that they never had.  We both
agreed that there was no real system of checks and
balances when it came to the LocatePlus HR function
and that things often fell through the cracks.  Mr.
Whitney said the company should have a new-hire
checklist of necessary documents and the like and I
replied that the company did, but that is (sic.) was
not really followed.  I then added that, as an example
of inconsistency, I had never signed a non-
disclosure/non-compete agreement at LocatePlus.  Mr.
Whitney said he was not surprised and that there was a
lot of stuff like that going on.  He then told me it
really did not matter that I had not signed an
agreement because an employee at a high level like me
had some sort of "implied" contract or agreement under
Massachusetts law that prevented me from disclosing
information or competing.  Neither Mr. Whitney nor
anyone at LocatePlus approached me or asked me to sign
an agreement after this conversation.

## Additional Background:

5.    Over the course of Mr. Silva's career at
LocatePlus, he consulted with the undersigned on several
occasions for day-to-day employment law advice in
connection with his duties as a senior executive at
LocatePlus.

6.    It is true that the undersigned did recently work
with Silva in connection with the company's defense of an

- 3 -

EEOC charge, in which a subordinate of Silva made certain allegations of discrimination against Silva and others.

7.    Silva interviewed on April 28, 2004 with an EEOC investigator and an EEOC attorney from the enforcement division.   The undersigned represented Silva in that interview.   After Silva's interview, he and the undersigned met to discuss legal strategy for the remainder of the EEOC proceeding and the future.

8.    This conversation did not take place 6 months before Silva's resignation; rather, it was just two months before, on April 28, 2004.

9.    As counsel for LocatePlus, the undersigned will not dignify Silva's self-serving allegations contained in Paragraph 9 of his affidavit with a response.   However, it is clear from the text of Silva's affidavit that the April 28, 2004 conversation was a confidential discussion between a senior executive of LocatePlus (the client) and its counsel for the purpose of seeking legal advice to benefit LocatePlus.

## The Conversation Described By Silva In Paragraph 9 Of His Affidavit Is Inadmissible:

10.    Well established law provides that such conversations between a counsel and a senior executive of a corporation are protected by the attorney-client privilege

- 4 -

of the corporation. Because that privilege belongs to the corporation, only the corporation can waive it. A former employee cannot elect to waive the privilege.

11. The ability of an attorney to speak freely and frankly with their clients is vital to the American system of justice. Upjohn Company v. U.S., 449 U.S. 383, 389 (1981). In recognition of that principal the courts have long recognized the privilege that attaches to communication between an attorney and their client. Id.

12. The principal of attorney-client privilege becomes more complex "when the client is a corporation, which in theory is an artificial creature of the law, and not an individual." Id. at 389-390. However, the Court has long accepted that such privilege also applies when the client is a corporation. Id.

13. Because a corporation itself cannot speak, privilege is created through the actions of "individuals empowered to act on behalf of the corporation." Commodity Futures Trading Commission v. Weintraub, 471 U.S. 343, 348 (1985).

14. Thus it follows that "the power to waive the corporate attorney-client privilege rests with the corporation's current management and is normally exercised by its officers and directors." Id. A manager's power to

- 5 -

waive privilege must be exercised consistent with their "fiduciary duty to act in the best interest of the corporation and not of themselves as individuals." Id. at 349; Chronicle Publishing Co. v. Hantzis, 732 F. Supp. 270, 273 (D. Mass. 1990).

15.   Furthermore, the power to waive privilege can only be exercised by current officers. Commodity Futures Trading Commission, 471 U.S. at 349. Former officers cannot waive corporate privilege even in relation to "statements that the former might have made to counsel concerning matters within the scope of their corporate duties." Id.

16.   The conversation Mr. Silva had with the undersigned took place in the context of an attorney-client relationship. The undersigned was acting at outside counsel for LocatePlus regarding an EEOC charge filed against the corporation. Because the undersigned's sole relationship with LocatePlus was as its attorney, it can be assumed that privilege attaches to conversations had between the undersigned and senior management with LocatePlus, such as the conversation recounted by Mr. Silva in his affidavit. Borase v. M/A COM, 171 F.R.D. 10, 15 (D. Mass. 1997).

- 6 -

17.    Because the conversation is protected by the
LocatePlus's attorney-client privilege, Mr. Silva as a
former executive does not have the power to waive such
privilege, even in relation to comments he made to counsel.
Commodity Futures Trading Commission, 471 U.S. at 349.


**WHEREFORE**, LocatePlus respectfully requests that this
Court issue an order:

a.    Striking Paragraph 9 of Silva's affidavit from
the affidavit;

b.    Prohibiting Silva and his counsel from attempting
to introduce any evidence that is based on privileged
conversations in future proceedings; and

c.    Granting such other and further relief that this
court feels just and necessary.

Dated:   August 8, 2004

                              Respectfully Submitted,


                              /s/ Mark M. Whitney
                              _____
                              Mark M. Whitney, Esq.
                              BBO # 637054
                              **MORGAN BROWN & JOY, LLP**
                              One Boston Place
                              Boston, MA 02108
                              Phone (617) 523-6666
                              Fax (720) 293-9696
                              *Counsel for Plaintiff*

## Local Rule 7.1(a)(2) Certification

Silva's counsel served the undersigned with his opposition papers on Friday afternoon, August 6, 2004. However, the undersigned was appearing in the Northern District of Georgia where he obtained a stay of the related action pending in that court.  Thus, the undersigned did not have an opportunity to consider Silva's opposition papers until Saturday, August 8, 2004.  Therefore, with regard to Rule 7.1(a)(2) certification, and in light of the velocity of these proceedings, the undersigned certifies that he attempted to contact all known Georgia and Massachusetts counsel (four attorneys) to seek their assent to this motion, or to narrow the issue presented in this motion, by e-mail on Sunday, August 8, 2004.  The undersigned also attempted to contact two of Silva's counsel (Jeff Robertson and Michelle Bernstein) by telephone.  By the time of filing, the undersigned had received no response.

/s/ Mark M. Whitney

Mark M. Whitney, Esq.

- 8 -

## **CERTIFICATE OF SERVICE**

This is to certify that a copy of the foregoing

document has been sent by fax on August 8, 2004 and by hand

delivery on August 9, 2004 to Mary W. O'Connor, Esq.,

Gaffin, Krattenmaker & O'Connor P.C., 2400 Prudential

Tower, 800 Boylston Street, Boston, MA  02199.  A courtesy

copy of this motion was also sent to defendant's Georgia

counsel by fax only.

                              /s/ Mark M. Whitney

                              _____

                              Mark M. Whitney, Esq.