UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOCATEPLUS HOLDINGS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>STEVE SILVA,<br><br>Defendant. | Civil Action No.<br>04-11705-RGS |

## SECOND AFFIDAVIT OF JON R. LATORELLA IN SUPPORT OF PLAINTIFF'S MOTION FOR A PRELIMINARY INJUNCTION

I, Jon R. Latorella, hereby depose and state:

1. I am the President and Chief Executive Officer of LocatePLUS Holdings Corporation ("LocatePlus"). I am the founder of the company.

2. I submit this affidavit to address certain of the factual allegations contained in the affidavit of Steve Silva in opposition to LocatePlus's motion for a preliminary injunction.

3. Mr. Silva makes several allegations about his move from SuperWings to LocatePlus. LocatePlus did not, and does not, compete with SuperWings. When Mr. Silva came on board at LocatePlus, SuperWings was building a product based on LocatePlus data.

4. Mr. Silva joined LocatePlus in January 2002. He claims in his affidavit that I told him that I would never sign a non-compete agreement. I never made this statement to Mr. Silva and, in fact, I did sign a non-compete agreement in September 2000. A true copy of my signed confidentiality and non-compete agreement is attached to this affidavit.

5.  Mr. Silva's assertion that LocatePlus did not want to sell Fair Credit Reporting Act ("FCRA") products is simply false. Mr. Silva knows full well that LocatePlus bought a company in September 2003, in part, for that purpose. LocatePlus's wholly owned subsidiary Certifion Corporation offers FCRA information through its "Entersect" brand. In fact, I had many discussions with Mr. Silva about LocatePlus's plans to build sales of the FCRA product sold through Certifion. In essence, part of Mr. Silva's job as VP of Business Development was to help build that line of our business through our wholly owned subsidiaries, and to market our other products as a group to customers and channel partners.

Signed under the pains and penalties of perjury this __9__ day of August, 2004.

_Jon R. Latorella_



## CONFIDENTIALITY AND NON-COMPETE AGREEMENT

Whereas, LocatePlus.com, Inc. (the "Company"), is desirous of engaging the undersigned person as an employee (the "Employee"); and,

Whereas, the Employee has been made aware that the Company maintains confidential, trade secret and proprietary information and is desirous of undertaking employment,

Now, therefore, in consideration of the Company employing the Employee and the Employee undertaking such employment, the undersigned parties do hereby agree as follows:

1. During the period of employment with the Company and after any separation from LocatePlus.com, Inc., the Employee agrees not to disclose or use in any way adverse to the Company, or assist in the unauthorized disclosure or use of, any Proprietary Information. "Proprietary Information" shall mean all of the Company's confidential and proprietary information and trade secrets including, but not limited to, the following: computer software codes, programs and data bases or other computer technology; all processes and formulae utilized by the Company; customer lists and any other lists or compilations of information; all Company plans and proposals, marketing and sales plans or financial information; any information regarding the Company's methods of doing business; any information of any third party in the possession of the Company with respect to which the Company or any of its affiliates are subject to duties of nondisclosure or restrictions on use; any works of authorship, concepts or ideas related to the business of the Company, whether created by the Employee or by others.

2. During the period of employment with the Company and after any separation from LocatePlus.com, Inc., the Employee agrees not to use for his or her own benefit or purpose any Proprietary Information. At the date of termination of employment with the Company, the Employee will promptly return to the Company all originals and copies of any Proprietary Information (in whatever form embodied) which he or she may have in his or her possession.

3. The Employee will notify the Company of all Proprietary Information which he or she may invent, conceive, develop or improve during his or her employment with the Company and he or she hereby assigns all rights, title, and interest in any and all such Proprietary Information to the Company.

4. The Employee hereby assigns all rights, title, and interest in any patents or copyrights, or applications therefore, based on any Proprietary Information, and agrees to take all actions and execute all documents reasonably necessary to assist the Company in obtaining, maintaining, enforcing and extending any patents or copyrights for the benefit of the Company.

5. During any employment and for a period of one year following the cessation of employment, the Employee agrees that he or she shall not, either directly or indirectly, solicit or entice any employee or consultant of the Company to leave the Company or work for anyone in competition with the Company or solicit, entice or in any way divert any customer or supplier to do business with any business or entity in competition with the Company.

6. The Employee expressly acknowledges that he or she understands that the terms of this Agreement shall remain in effect after the termination of his or her employment and shall be binding on his or her heirs, successors and assigns to the benefit of the Company and it successors and assigns. The Employee hereby acknowledges that this Agreement supercedes any prior trade secret or nondisclosure agreement(s) which he or she may have signed with the Company or its affiliates.

Dated: 2-15-200_

Dated:_____

_____
(Employee Signature)

_____
President, LocatePlus.com, Inc.