# Exhibit A

## to

## LocatePlus's Motion for Leave to File A Reply To Defendant Silva's Opposition to Plaintiff's Motion to Strike Portions of Silva's Affidavit

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LOCATEPLUS HOLDINGS CORPORATION,**<br><br>Plaintiff,<br><br>v.<br><br>**STEVE SILVA,**<br><br>Defendant. | Civil Action No.<br>04-11705-RGS |

**PLAINTIFF'S REPLY TO DEFENDANT STEVE SLIVA'S OPPOSITION TO PLAINTIFF'S MOTION TO STIKE PORTIONS OF SILVA'S AFFIDAVIT**

The plaintiff in the above-captioned action, LocatePlus Holdings Corporation ("LocatePlus"), hereby submits this Reply to defendant Steve Silva's ("Silva") Opposition to Plaintiff's Motion to Strike Portions of Silva's Affidavit.

**I.    INTRODUCTION AND BACKGROUND**

On Monday, August 9, 2004, the day of the preliminary injunction hearing in this matter, LocatePlus filed a motion to strike a portion of Silva's Affidavit that he filed in support of his opposition to LocatePlus's motion for a preliminary injunction. The Court delayed its ruling on the motion to strike to afford Silva the opportunity to file an opposition.

Silva filed his opposition on August 23, 2004. In his opposition, Silva presents two arguments: <u>first</u>, Silva claims that the alleged conversations that LocatePlus seeks to strike are actually "administrative" in nature, and not protected by the attorney client privilege; and <u>second</u>, that LocatePlus has impliedly waived its right to assert the attorney-client privilege by commencing the instant suit against Silva.

As discussed below, Silva's arguments are based on inapposite authority and are otherwise without merit. Accordingly, LocatePlus's motion to strike should be granted.

## II.   REPLY ARGUMENT

### A.   Silva's Assertion That The Alleged Communications Involved "Administrative Issues" Is Without Merit And The Authority Cited By Silva Supports LocatePlus's Position.

Silva relies on two cases to support his assertion that the communications at issue were administrative in nature and, therefore, not privileged. See Borase v. M/A Com, Inc., 171 F.R.D. 10 (D. Mass. 1997) and Slack v. Federal Trade Commission, No. 94-10407-MLW, 1980 WL 1984 (D. Mass. Nov. 18, 1980). Silva's reliance on these cases is misplaced and, moreover, both cases support LocatePlus's assertion of privilege.

#### 1.   Silva's Reliance On Borase Is Misleading, And Misconstrues The Holding Of That Case.

Silva cites the Borase case for the general proposition that, where an attorney discusses administrative issues with an employee of a company no privilege attaches to the conversation. Silva's use of the Borase case and selective quotation of its text is misleading because Borase applies specifically to situations where, unlike here, an in-house counsel served dual roles as a legal and business advisor.

After generally alleging that the conversation at issue here involved administrative issues, Silva cites the following language from Borase: "nonlegal work would include the rendering of business or technical advice unrelated to any legal issues." Borase, 171 F.R.D. at 14; Silva's Opposition to LocatePlus's Motion to Strike at 4-5. However, Silva omitted the preceding sentence which qualifies the sentence he quoted: "[The privilege] does not apply when in-house counsel is engaged in 'nonlegal work.'" Id. Silva also fails to mention that the in-house counsel at issue in Borase held the position of Senior Vice President, Corporate Secretary and General

Counsel, a position that entailed both business and legal duties.  Id. at 11, 15.  The attorney's dual role as a corporate employee was the central focus of the court's holding which granted a motion to compel deposition testimony of the in-house attorney.  Id.

Morgan, Brown & Joy is a law firm that specializes in providing legal representation to employers concerning employment and labor law issues.  Mark Whitney has represented LocatePlus as its *outside* employment law counsel for more than five years.  Mr. Whitney has provided dispute resolution services to LocatePlus as well as day-to-day compliance advice with regard to the myriad laws governing the workplace.  Mr. Whitney is not employed by LocatePlus in any capacity.  His *sole relationship* with LocatePlus is, and always has been, as its outside legal counsel.  This Court should therefore disregard the arguments contained in Silva's opposition based on the Borase case.

> **2. Under Borase, Locateplus Is Entitled To A *Presumption* That The Communications At Issue Are Protected By The Attorney Client Privilege.**

The Borase Court noted that the party seeking to assert the attorney-client privilege argued that it was proper for the Court to presume that the in-house counsel was acting in the same capacity as the company's outside legal counsel when he engaged in the communications at issue.  The Court stated:

> At best, M/A Com would have the Court presume this to be the case from the circumstances, arguing that obviously Mr. Birchfield [the in-house counsel] was acting in the same capacity as the attorneys from Edwards & Angell [the company's outside counsel].  ***While such an assumption might be able to be made if M/A Com had retained outside counsel*** for the particular purpose of representing it in its dealings with Mr. Borase and his attorneys, the assumption cannot be made in the case of an in-house counsel who has other additional responsibilities over and above the rendering of legal advice.

Id. at 15 (emphasis added).  The court therefore indicated that the presumption of privilege would apply where the statements at issue were made to outside counsel.

Here, the communications LocatePlus seeks to strike were allegedly made to the undersigned while serving in his capacity as outside counsel. Thus, LocatePlus is entitled to a presumption that the communications at issue are protected by the attorney-client privilege and should be stricken from Silva's affidavit.

### 3. Silva's Reliance On The Slack Case Is Likewise Misplaced Because The Case Is Factually Distinguishable And Also Involves In-House Lawyers Serving In Dual Capacities.

Silva again engages in selective quotation taken out of context in his reliance on the Slack v. Federal Trade Commission case. Silva's Opposition to LocatePlus's Motion to Strike at 5. The Slack case is distinguishable on its facts and involved a finding that in-house attorneys at the FTC were serving in an administrative role with respect to the information the FTC sought to protect under the attorney-client privilege. Slack, 1980 WL 1984 at *2.

Slack involved a comprehensive Freedom of Information Act request for the disclosure of numerous documents in the possession of the FTC. The FTC refused to turn over several documents, in part based on the attorney-client privilege. Silva's reliance on Slack related to one document, a transcript of an FTC meeting that included in-house FTC attorneys, at which the participants discussed whether a legal enforcement recommendation should be made public or not. The Court noted:

> The portions of the transcript which the FTC is attempting to withhold are not protected by the attorney-client privilege because those portions involve the rendering of administrative advice, not legal advice. The advice relates to the decision whether a legal enforcement recommendation by the staff should be made public. This is an administrative matter, not a question of law. ***The participants at that meeting were acting as administrative officers, not lawyers***.

Id. (emphasis added).

Slack is therefore distinguishable from the instant matter because it, like Borase, involved the assertion of the attorney-client privilege in a situation where the attorneys at issue served in

- 4 -

both legal and non-legal capacities.  This Court should disregard Silva's arguments that are based on the Slack case and find that the communications LocatePlus seeks to strike are protected by the attorney-client privilege.

> **B.  Locateplus Has Not Waived Its Attorney-Client Privilege By Pursuing This Lawsuit Because (1) The Exclusion Of The Attorney-Client Protected Communication Will Not Meaningfully Weaken Silva's Defense And (2) Locateplus Has Not Placed Its Privilege "At Issue" By Enmeshing It In Silva's Defense.**

Silva argues that disclosure of attorney-client privileged communications is necessary to mount an effective defense.   However, this Court should strike the attorney-client protected communications from Silva's affidavit for the following reasons.

### 1.  Applicable Legal Standard.

The question of whether a party implicitly waives privileged information by litigating its claims in a civil case, and what test to apply to determine if a waiver occurred, should be evaluated as follows:

> *[A] court should begin its analysis with a presumption in favor of preserving the privilege*.  In a civil damage action, however, *fairness* requires that the privilege holder surrender the privilege to the extent that it will weaken, *in a meaningful way*, the defendant's ability to defend.  That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails.  The burden on the defendant is proportional to the importance of the privilege.  The court should develop the parameters of its discovery order by carefully weighing the interests involved, balancing the importance of the privilege asserted against the defending party's need for the information to construct his most effective defense.

Sorenson v. H & R Block, Inc., 196 F.R.D. 206, 207 (D. Mass. 2000) (Collings, Chief M.J.) (emphasis added) quoting, Greater Newburyport Clamshell Alliance v. Public Service Co. of New Hampshire, 838 F.2d 13, 20 (1st Cir. 1988); see also Small v. Hunt, 152 F.R.D. 509, 512 (E.D.N.C. 1994) (whether the attorney-client privilege has been put "at issue" involves a

question based on the notion of fairness). The courts have found that a party waives the attorney-client privilege if –

> (1) assertion of the privilege was a result of some affirmative act, such as the filing of suit by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information *vital to* his defense.

Savoy v. Richard A. Carrier Trucking, Inc., 178 F.R.D. 346, 350 (D. Mass. 1998) (Neiman, J.) (emphasis added) (quoting Hearn v. Rhay, 68 F.R.D. 574, 581 (E.D. Wash. 1975)).[1]

### 2. The Exclusion Of The Attorney-Client Protected Communications Will Not "Meaningfully Weaken" Silva's Defense, Because Such Evidence Is Not Vital To His Case.

Silva seeks to be permitted to testify that he previously disclosed to the undersigned counsel for LocatePlus that he did not sign a non-compete agreement. Silva Affidavit ¶ 9. Silva claims that he made this statement immediately after he interviewed with representatives of the EEOC in connection with a charge of discrimination pending against LocatePlus. Id. Although Silva claims that this conversation occurred in early 2004, the actual date of his EEOC interview was April 28, 2004. See LocatePlus's motion to strike at ¶ 7-8.

When "carefully weighing the interests involved," (Sorenson, 196 F.R.D. at 207) this Court should consider the purpose for which Silva intends to utilize the privileged communication. Silva's purpose for introducing his alleged disclosure to the undersigned is stated clearly throughout his pleadings. Silva seeks to first disclose the privileged communication, then make a related assertion that, "[n]o one ever made an effort thereafter to request that he sign [a non-compete agreement]." See Silva's opposition to LocatePlus's motion

---

[1]  It is interesting to note that the Court in the Savoy case, which is heavily relied upon by Silva, did not find that an implied waiver of the attorney-client privilege had occurred. Rather, the Court instead based its ruling on its decision under the facts of that case to interpret the attorney-client privilege narrowly. Savoy, 178 F.R.D. at 350 ("Although it cannot say conclusively that there has been a waiver, the court does believe that the attorney-client privilege should be interpreted narrowly in this matter.")

for a preliminary injunction at p. 4.[2] What remains ambiguous from Silva's pleadings is the precise inference he seeks the reader to draw from the communication at issue and his related assertion. Silva's purpose in using the protected communication becomes even more blurred when one examines the multiple and competing inferences that are possible. Perhaps Silva seeks to raise the inference that LocatePlus knows he did not sign the agreement and this suit is meritless? However, it is equally possible to draw adverse inferences, such as: Silva never made the statement to the undersigned because if he had, LocatePlus, which requires all employees to sign an agreement, would have followed-up and asked him to sign an agreement; or Silva did make the statement, the undersigned checked with LocatePlus and determined that he had indeed signed the agreement; or Silva is intentionally or inadvertently confusing prior advice sought from the undersigned concerning a potential new hire who had no non-compete. The jury could likely draw other positive and/or adverse inferences from Silva's introduction of the alleged communication.

In addition, the protected communication Silva seeks to introduce is redundant of other evidence he can introduce without interfering with LocatePlus's attorney-client privilege. For example, Silva has submitted evidence that supports his assertion that he never signed a non-compete agreement: Silva testified that he never signed the agreement (Silva Affidavit at ¶¶ 8 & 20); Silva claims that LocatePlus's CEO, Jon Latorella, told him that Silva should never sign a non-compete and that Latorella himself had not signed one (Silva Affidavit at ¶ 7); rather than sign the agreement, Silva simply placed the unsigned agreement into his desk drawer (Silva Affidavit at ¶ 8); Silva discovered the unsigned agreement in his desk drawer on his last day of employment and threw it away with other unimportant papers from his desk (Id.). Clearly, Silva

---

[2]   See also Silva's Affidavit at ¶ 9 ("Neither Mr. Whitney nor anyone at LocatePlus approached me or asked me to sign an agreement after the conversation."); Silva's opposition to LocatePlus's motion to strike at p. 3 ("At no time thereafter did anyone at LocatePlus request that Silva sign any non-compete.").

will be able to present at trial other admissible evidence to support his claim that he never signed the agreement.

In weighing the interests, it is useful to view the communication at issue against the chronological backdrop of LocatePlus's evidence that proves Silva <u>did</u> sign the agreement:

- Jon Latorella spoke with Silva in January 2002 about Silva's signing the agreement, and Latorella recalls holding Silva's signed agreement in his hand. Latorella Affidavit at ¶ 9.

- Despite Silva's assertion that Latorella told him that he should never sign a non-compete agreement and that Latorella had not signed one, Latorella has filed with the Court a copy of his signed, non-compete agreement (signed two years before Silva joined LocatePlus). Second Latorella Affidavit at ¶ 4, and Exhibit A thereto.

- Paula Reed recalls that she collected Silva's signed agreement from him in connection with the commencement of his employment in January 2002. Reed bases her recollection on her consistent use of a new hire checklist to ensure that all signed documents are received before she entered people into the payroll system. Reed Affidavit ¶¶ 3-4, and Exhibit A thereto.

    o Reed specifically states that she has <u>never</u> entered a new hire into the payroll system without first obtaining a signed non-compete agreement. To further bolster that assertion, Reed provided copies of signed non-compete agreements from <u>all</u> employees who were hired by LocatePlus since she took control of the new hire process. Only Silva's agreement is missing. Second Reed Affidavit at ¶¶ 3-5.

*[Silva wishes to introduce that he disclosed to the undersigned on the day of his EEOC interview (April 28, 2004) that he never signed a non-compete agreement.]*

- Within weeks after Silva's alleged statement to the undersigned, he expressed doubt about whether he had signed a non-compete agreement. In early June 2004, Silva told Jill Jewell (a co-worker and confidant) that "he didn't think he had a non-compete agreement, but he just didn't remember whether he signed one or not and wasn't 100% sure." Jewell Affidavit ¶ 6.

- During the week of June 16-17, 2004, Paula Reed inserted a paid-time-off form into Silva's personnel file and <u>saw his signed agreement</u> in the file at that time. Reed Affidavit ¶ 9.

- Within a couple of weeks from Silva's admission of uncertainty to Jewell, during the week of June 21, 2004, Silva approached Reed and asked to see his

personnel file. Reed gave him his entire personnel file. Silva took the file and never returned it. Reed Affidavit ¶¶ 10-13.

- Silva did not resign until July 6, 2004, after he took his personnel file.

- On July 8, 2004, James Fields asked Silva where Silva intended to work and reminded Silva that his non-compete agreement prevented him from working for a competitor. Fields Affidavit at ¶ 3.

- On July 16, 2004, Silva's last day of employment with LocatePlus, Latorella specifically advised Silva that he was prohibited from joining a competitor by the company's non-compete agreement. Latorella Affidavit at ¶ 19.

- At some point between his resignation and his last day of employment, Silva engaged in discussions with Jill Jewell which left Jewell with the impression that, "he was very concerned that LocatePlus would commence a court case against him because ChoicePoint was a direct competitor …." Jewell Affidavit at ¶ 10.

- Despite the fact that LocatePlus warned Silva that it considered him to be bound by the company's non-compete agreement, and despite Silva's concern that he may be sued by LocatePlus, Silva bizarrely claims that when he discovered his unsigned, original agreement on his last day of employment he chose to throw it away, rather than hold onto it for safekeeping. Silva Affidavit ¶ 8.

Based on the above, LocatePlus has produced overwhelming evidence to establish that Silva signed the Agreement. In fact, it is possible to argue that introduction of the communication at issue hurts Silva because the evidence shows that several weeks after the alleged statement to the undersigned, Silva backpedaled and confessed to Jewell that he was not 100% sure whether he signed an agreement. Shortly after confessing to Jewell his uncertainty Silva absconded with his personnel file containing his signed agreement that Reed had seen in the file before its disappearance.

Based on the above, LocatePlus submits that the privileged communication Silva seeks to introduce is, at best, of marginal evidential value to Silva's defense. The communication may be relevant, but it is not material to Silva's defense. Indeed, Silva's stated purpose for using the communication leaves the Court and jury with a situation where several inferences can be drawn,

- 9 -

some of which are adverse. The communication at issue is also redundant of other admissible and non-privileged evidence upon which Silva can rely. Moreover, in light of the plethora of damaging evidence proffered by LocatePlus, it is unlikely that the exclusion of the attorney-client protected communication will meaningfully weaken Silva's defense. Thus, this Court may reasonably conclude that the communication at issue is not "vital to" Silva's defense and his inability to introduce it will not weaken his defense in "a meaningful way."[3]

Finally, Silva will have the opportunity to mount an effective defense through impeaching and challenging the veracity of the evidence already available. See Clamshell Alliance, 838 F.2d at 22-23. Silva has not demonstrated why the inclusion of the protected communication is necessary and why it is unreasonably difficult for him to mount a defense. Silva is free to depose and cross-examine LocatePlus's witnesses; Silva is free to challenge the authenticity of documents; and, Silva is free to offer testimony and other evidence that supports his position, so long as it does not violate any attorney-client privilege. In light of these factors, Silva has not met his burden to show that the attorney-client communication sought to be disclosed is "vital" or "necessary" and LocatePlus's assertion of privilege will result in a "manifest injustice." Hearn, at 581-82.

This court should weigh these factors heavily against disclosure. As the Supreme Court has recognized, attorney-client privilege serve an important function, namely, "the attorney-client privilege serves the function of promoting full and frank communications between

---

[3] It is important that the Court recognize that both parties have focused their implied waiver of privilege arguments on just one statement alleged by Silva - that he told the undersigned he did not sign the agreement. However, LocatePlus seeks to strike the entirety of Paragraph 9 from Silva's affidavit. The vast majority of Paragraph 9 contains additional disclosures of privileged communications between Silva and the undersigned concerning LocatePlus's human resources practices and the then-pending EEOC charge. Silva does not argue that LocatePlus has waived the privilege with respect to those additional communications. Silva's sole claim as to those other statements is that they were "administrative," which LocatePlus refutes in the previous section.

attorneys and their clients." Upjohn Co. v. United States, 449 U.S. 383, 389 (1983). Where the court must balance the importance of preserving LocatePlus's asserted privilege against (1) Silva's need to submit privileged communications of marginal evidential value to construct a defense which has already been seriously compromised by the evidence and (2) his ability to mount a defense through impeachment of the evidence, the Court should weigh the interests in favor of LocatePlus. To allow disclosure of such communications would be undoubtedly adverse to the attorney-client relationship, as it would discourage the client from providing necessary information to its counsel in fear of such information being revealed in the future.

### 3. The Privileged Communications In Silva's Affidavit Should Be Stricken Because Locateplus Has Not Placed Its Privilege At Issue By Enmeshing It In Silva's Defense.

Silva also argues that LocatePlus has waived its attorney-client privilege by directly placing the communication (see note 3, *supra*) between Silva and the undersigned at issue in this case. However, Silva has failed to meet the legal standard to compel disclosure.

In order to necessitate disclosure, Silva must show that LocatePlus has place its privilege at issue because "the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails." Sorenson, 197 F.R.D. at 207. Interpreting the Clamshell Alliance case 12 years later, this Court more recently explained the meaning of "enmeshing":

> [E]nmeshing means something more than that the evidence between attorney and client is relevant to the subject matter of the action. …. What the Court of Appeals meant by "enmeshed" is that the privileged information itself has independent relevance to the claim or defense *because of* its privileged status. On the facts of the *Greater Newburyport* case, *it was the fact that the discussions in which the informant participated were privileged which gave rise to the claim* of deprivation of Sixth Amendment rights.

- 11 -

Sorenson, 196 F.R.D at 208 (emphasis added).[4]  In other words, to be "enmeshed," the privileged information itself must have independent relevance and must be a "material issue in a judicial proceeding."  Id.  A material issue has the "the potential to affect the outcome of the action."  MacGlashing v. Dunlop Equipment Co., Inc., 89 F.3d 932 (1st Cir. 1996); also see generally 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725 (1998).

     Silva fails to meet this demanding standard.  Assuming *arguendo*, that Silva had told the undersigned that he never signed his non-compete agreement, that statement would not decide the ultimate issues at stake in this case:  whether Silva breached his non-compete agreement, whether Silva breached his fiduciary duty, duty of loyalty and/or duty to preserve confidential information; whether Silva misappropriated LocatePlus's trade secrets; and whether Silva committed the tort of conversion.  Moreover, whether Silva made the alleged statement or not is immaterial to the issue of whether he actually signed the agreement and, as demonstrated in the preceding section, the overwhelming evidence points to that fact that he did sign the agreement.

     Like the defendant in Sorenson, Silva has similarly failed to show that the "privileged information itself has independent relevance to the claim or defense ***because of*** its privileged status."  Sorenson, 196 F.R.D at 208 (emphasis added).  LocatePlus respectfully submits that the well-reasoned Sorenson decision (not cited in Silva's opposition) is the most apposite to the instant case and should therefore control this Court's ruling.

---

[4]    The basis for the plaintiffs' civil rights claim in the Clamshell Alliance case was the defendant's alleged infiltration into the plaintiffs' attorney-client relationship by inserting an informant into meetings where strategy was discussed with the plaintiffs' attorney and the improper interception of attorney-client communications.  Clamshell Alliance, 838 F.2d at 20.

### III. CONCLUSION

For the above reasons, and the reasons set forth in LocatePlus's motion to strike portions of Silva's Affidavit, this Court should enter an order:

    a.    Striking Paragraph 9 of Silva's affidavit from the affidavit;

    b.    Prohibiting Silva and his counsel from attempting to introduce any evidence that is based on privileged conversations in future proceedings; and

    c.    Granting such other and further relief that this court feels just and necessary.

Dated: August 30, 2004

        Respectfully Submitted,

        /s/ Mark M. Whitney
        _____
        Mark M. Whitney, Esq.
        BBO # 637054
        **MORGAN BROWN & JOY, LLP**
        One Boston Place
        Boston, MA 02108
        Phone (617) 523-6666
        Fax (720) 293-9696
        *Counsel for Plaintiff*

### CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document has been sent by e-mail and regular mail to Mary W. O'Connor, Esq., Gaffin, Krattenmaker & O'Connor P.C., 2400 Prudential Tower, 800 Boylston Street, Boston, MA 02199, on this 30th day of August, 2004. A copy of this document was also sent to defendant's Georgia counsel by e-mail and regular mail.

        /s/ Mark M. Whitney
        _____
        Mark M. Whitney, Esq.