UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOCATEPLUS HOLDINGS CORPORATION,<br><br>Plaintiff,<br><br>v.<br><br>STEVE SILVA,<br><br>Defendant. | ) ) ) ) ) ) ) ) ) ) ) ) ) CIVIL ACTION<br><br>FILE NO. 04-11705-RGS |

## DEFENDANT STEVE SILVA'S BRIEF IN OPPOSITION TO PLAINTIFF LOCATEPLUS HOLDINGS CORPORATION'S MOTION TO STRIKE PORTIONS OF STEVE SILVA'S AFFIDAVIT

Defendant Steve Silva hereby submits his Brief in Opposition to Plaintiff LocatePlus Holdings Corporation's ("LocatePlus") Motion to Strike Portions of Steve Silva's Affidavit.

### I.    INTRODUCTION

Plaintiff seeks to strike portions of Steve Silva's August 5, 2004 affidavit on the grounds that the affidavit discloses information protected by the attorney-client privilege. The motion should be denied because the conversation was not privileged and, even if it were, LocatePlus has waived any such privilege by filing this lawsuit.

{00017634.DOC}- 1 -

00017634.DOC

## II. **BACKGROUND**

LocatePlus filed the instant action seeking a preliminary injunction against Silva, a former employee of LocatePlus, from, *inter alia*, working for any business that engages in competition with LocatePlus. (Verified Complaint, Prayer for Relief). In its Complaint, LocatePlus alleges that it is entitled to injunctive relief and monetary damages pursuant to a form document entitled, "LocatePlus.com Confidentiality and Non-Compete Agreement" ("Agreement"), which it claims Silva executed. (Id. at ¶ 10). Silva, however, adamantly denies that he ever executed the Agreement. (Silva Aff. at ¶ 8, attached to ChoicePoint's Brief in Opposition to LocatePlus's Motion for Preliminary Injunction as Exhibit A).

On August 9, 2004, this Court held a hearing regarding LocatePlus's Motion for Preliminary Injunction. Later that day, this Court entered an Order denying LocatePlus's Motion for Preliminary Injunction on the ground that "there is a heated dispute of fact" as to whether Silva signed the Agreement.[1] (Order at 1).

On that same day, LocatePlus filed a Motion to Strike a portion of Silva's affidavit in which Silva recounts a casual conversation that he had with LocatePlus's counsel (Mark Whitney). During this conversation following their participation in an EEOC investigation, which began as a discussion about deficiencies in the human resources

---

[1] This Court also concluded that the Agreement is "a confidentiality and non-solicitation agreement, not a non-competition agreement." (Order at 2).

functions at LocatePlus, Silva told Whitney that the had never signed a non-disclosure/non-compete agreement. (See id. at ¶ 9). Whitney replied that he was not surprised and that "there was a lot of stuff like that going on." (Id.). Whitney also told Silva that it made no difference that he had not signed such an agreement because a high-level employee such as Silva had an "implied" agreement under Massachusetts law that prevented him from disclosing information or competing. (Id.). At no time thereafter did anyone at LocatePlus request that Silva sign any non-compete. (Id.). LocatePlus erroneously contends that this conversation is protected by the attorney-client privilege. (Motion to Strike at 4-7).

## III. ARGUMENT AND CITATION OF AUTHORITY

### A. Silva's Casual Conversation with Whitney about Administrative Issues at LocatePlus Is Not Protected by the Attorney-Client Privilege

The conversation between Silva and Whitney is not protected by the attorney-client privilege because (i) Silva was not seeking any form of advice from Whitney and (ii) the discussion solely involved administrative -- not legal -- matters. To establish that a communication is subject to the attorney-client privilege, the party invoking the privilege must prove the following elements:

> (1) where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose, (4) made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal adviser, (8) except the protection [may] be waived.

Cavallaro v. United States, 284 F.3d 236, 245 (1st Cir. 2002). Thus, "the attorney-client privilege attaches only when the attorney acts in that capacity." Borase v. M/A Com, Inc., 171 F.R.D. 10, 14 (D. Mass. 1997). The First Circuit has cautioned, however, that the privilege must be construed narrowly. Cavallaro, 284 F.3d at 245.

LocatePlus contends that "[t]he conversation Mr. Silva had with the undersigned took place in the context of an attorney-client relationship. The undersigned was acting at [sic] counsel for LocatePlus regarding an EEOC charge filed against the corporation." (Motion to Strike at 6). While the initial purpose of Silva's meeting with Whitney was to discuss the EEOC Charge that had been filed against LocatePlus, the conversation Silva describes in his affidavit in no way "relat[es] to that purpose" -- Silva's testimony focuses solely on the conversation that occurred *after* he and Whitney had finished discussing the EEOC Charge. (See id.); Cavallaro, 284 F.3d at 245.

In the conversation that ensued, Silva and Whitney simply discussed the shortcomings of LocatePlus's human resources department and the fact that Silva had never signed a non-disclosure/non-compete agreement. (Id.). Thus, a plain reading of Silva's affidavit reveals that Silva was not seeking, nor was Whitney dispensing, *any* form of "advice" -- let alone, "legal advice." Id. Instead, Silva and Whitney were simply discussing administrative issues at LocatePlus. Borase,

171 F.R.D. at 14 ("nonlegal work would include the rendering of business or technical advice unrelated to any legal issues"). Therefore, LocatePlus has not carried its burden of demonstrating that this conversation is protected by the attorney-client privilege. See Slack v. Federal Trade Commission, Civ. Action No. 79-973-S, 1980 WL 1984 at *2 (D. Mass Nov. 18, 1980) (transcript relating to whether legal enforcement recommendation should be made public not protected by attorney-client privilege because issue was "an administrative matter, not a question of law"); Borase, 171 F.R.D. at 15-16 (general counsel's conversations about, *inter alia*, reasons for plaintiff's termination and proposed separation agreement not privileged in employment discrimination case because there was no evidence "legal advice was being sought or rendered").

**B.    Even if Silva's Testimony Were Subject to the Attorney-Client Privilege, LocatePlus Has Waived the Privilege**

Even if Silva's testimony were subject to the attorney-client privilege (which it is not), LocatePlus has waived the privilege by directly placing the conversation between Silva and Whitney at issue in this case. Not only did LocatePlus file this lawsuit, it has further accused Silva of stealing his personnel file to circumvent the absence of a signed agreement. A party waives the attorney-client privilege if

> (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense.

Savoy v. Richard A. Carrier Trucking, Inc., 178 F.R.D. 346, 350 (D. Mass. 1998). "The advice or conduct of a party's lawyer may become the subject of litigation -- and thereby impliedly waived -- when that lawyer's advice or conduct is explicitly or implicitly made the basis of an offense or defense." Id.

"The 'at issue' doctrine is based on notions of fairness and truth-seeking." Small v. Hunt, 152 F.R.D. 509, 512 (E.D. N.C. 1994). "[F]airness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend. That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are emmeshed in important evidence that will be unavailable to the defendant if the privilege prevails." Greater Newburyport Clamshell Alliance v. Public Service Co. of New Hampshire, 838 F.2d 13, 20 (1st Cir. 1988).

Here, LocatePlus's assertion of the privilege arises directly from its decision to file the instant action to enforce the terms of a document that Silva never signed. (Verified Complaint at ¶ 1; Silva Aff. at ¶ 8); Savoy, 178 F.R.D. at 350. As a result, LocatePlus has put Silva's conversation with Whitney "at issue" in this case. Id. Further, applying the privilege to the communications between Silva and Whitney would deny Silva an integral component of his defense -- that he and Whitney specifically discussed the fact that he had never signed the Agreement

during his employment with LocatePlus. Therefore, "fairness *require*[s]" that LocatePlus "surrender the privilege to the extent that it will weaken, in a meaningful way, [Silva's] ability to defend." Greater Newburyport, 838 F.2d at 20. (emphasis added). Accordingly, by filing suit against Silva for allegedly breaching the terms of the Agreement, LocatePlus has waived its argument that the conversation between Silva and Whitney about the Agreement is protected by the attorney-client privilege. See Savoy, 178 F.R.D. at 350 (in suit charging automobile insurer with bad faith in settling claim, attorney-client privilege did not bar questioning of plaintiff's counsel at deposition concerning plaintiff's refusal to undergo medical examination, even though plaintiff had not directly put at issue her refusal to do so); Small, 152 F.R.D. at 512 (by filing petition to modify settlement agreement, defendant waived any attorney-client privilege that may have protected deliberations of defendant's settlement committee); Sedco Intern, S.A. v. Cory, 683 F.2d 1201 (8th Cir. 1982) (plaintiff who asserted claim of fraud waived right to assert privilege to prevent disclosure of communications which might have proven plaintiff did not rely on statements of defendant's employees or that such reliance was not reasonable); Glenmede Trust Co. v. Thompson, 56 F.3d 476, 487 (3rd Cir. 1995) (defendant waived privilege as to all communications by putting structure of transaction at issue).

## IV. CONCLUSION

For all of the foregoing reasons, Silva respectfully requests that the Court enter an Order denying LocatePlus's Motion to Strike Portions of Steve Silva's Affidavit.

This 23rd day of August, 2004.

_____
Mary Winstanley O'Connor, Esq.
(BBO # 541708)
Michelle A. Bernstein, Esq.
(BBO #637884)
Gaffin, Krattenmaker & O'Connor P.C.
2400 Prudential Tower
800 Boylston Street
Boston, Massachusetts 02199
(617) 437-6530

Stephen W. Riddell
Georgia Bar No. 604810
Charlie A. Hawkins
Georgia Bar No. 338680
Jeffery E. Robertson
Georgia Bar No. 609739
TROUTMAN SANDERS LLP
5200 Bank of America Plaza
600 Peachtree Street N.E.
Atlanta, Georgia 30308-2216
Phone: (404) 885-3000
Fax: (404) 962-6515

Attorneys for Defendant Steve Silva

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| LOCATEPLUS HOLDINGS CORPORATION,<br><br>Plaintiffs,<br><br>v.<br><br>STEVE SILVA,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)  CIVIL ACTION<br>)<br>)  FILE NO. 04-11705-RGS<br>)<br>)<br>)<br>) |

## CERTIFICATE OF SERVICE

This is to certify that a copy of the within and foregoing **DEFENDANT STEVE SILVA'S BRIEF IN OPPOSITION TO PLAINTIFF LOCATEPLUS'S MOTION TO STRIKE PORTIONS OF STEVE SILVA'S AFFIDAVIT** has been served on all parties via facsimile and United States mail, postage prepaid, addressed as follows:

> Mark M. Whitney, Esq.
> Corrine L. Hood, Esq.
> Morgan, Brown, & Joy, LLP
> One Boston Place
> Boston, Massachusetts 02108-4472

This 23rd day of August, 2004.

Michelle A. Bernstein

{00017634.DOC}{00017634.DOC}