UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **LOCATEPLUS HOLDINGS CORPORATION,**<br><br>**Plaintiff,**<br><br>v.<br><br>**STEVE SILVA,**<br><br>**Defendant**. | Civil Action No.<br>04-11705-RGS |

**PLAINTIFF'S MOTION TO RECONSIDER
THIS COURT'S DENIAL OF ITS
MOTION TO STRIKE PORTIONS OF DEFENDANT SILVA'S AFFIDAVIT**

NOW COMES the plaintiff in the above-captioned action, LocatePlus Holdings Corporation ("LocatePlus"), and respectfully moves this Honorable Court, pursuant to Rule 59 of the Federal Rules of Civil Procedure, for reconsideration of its denial of LocatePlus's motion to strike portions of defendant Steve Silva's ("Silva") affidavit. As grounds therefore, LocatePlus states as follows:

**Relevant Procedural Background**

1. On August 30, 2004, LocatePlus filed a motion for leave to file a reply to Silva's opposition to its motion to strike portions of Silva's affidavit. Attached as Exhibit A to that motion was a reply memorandum of law (the "Reply Memorandum"). (Collectively filed as Docket Entry # 17.)

2. On September 9, 2004, the Court issued its order denying LocatePlus's motion to strike portions of Silva's affidavit (the "Order"). (Docket Entry # 20.)

3. According to the PACER on-line docket as of today's date, the Court has not issued a ruling on LocatePlus's motion for leave to file a reply to Silva's opposition to LocatePlus's motion to strike portions of Silva's affidavit.[1]

**Reasons Why This Court Should Reconsider Its September 9, 2004 Order**

4. From a review of the text of the Order in combination with the absence of any ruling on Docket Entry # 17 (motion for leave to file reply and the attached Reply Memorandum), it appears that certain critical arguments raised in LocatePlus's Reply Memorandum may not have been addressed by the Court.

5. For example, the Order does not address LocatePlus's argument that it is entitled to *a presumption* that the statements at issue are protected by the attorney-client privilege. (See the Reply Memorandum, Docket Entry # 17, part 2 at pp. 3-4.) In fact, the Borase v. M/A COM, Inc. case cited on page 2 of the Order stands, in part, for the proposition that communications with outside counsel are entitled to a presumption that they are protected by the attorney-client privilege. 171 F.R.D. 10, 15 (D. Mass. 1997); see also Paul R. Rice, Attorney-Client Privilege in the United States, § 7:28 at n.39 & 7:29 (2d ed. 1999) (hereinafter "Attorney-Client Privilege in the U.S.") (citing Borase and several other cases from various jurisdictions, the author contrasts how courts have applied the presumption more readily to communications with outside counsel as compared with situations involving in-house counsel, particularly when the in-house counsel also holds an executive position within the company).

---

[1] The only reference in the docket to a motion for leave to file a reply that was granted is Docket Entry # 19, which relates to LocatePlus's motion for leave to file a reply to Silva's opposition to LocatePlus's motion for a preliminary injunction.

6. The Order does not address the portion of LocatePlus's Reply Memorandum which demonstrates that the case law cited by Silva is not only distinguishable, but supports LocatePlus's position that it is entitled to a presumption that the alleged communications at issue are protected by the attorney-client privilege. (Docket Entry # 17, part 2 at pp. 3-4.)

7. Nor does the Order address the critical distinction argued by LocatePlus that the alleged communications at issue took place with *outside counsel* as compared to the distinguishable situation where an in-house counsel has a business and legal role within a company. As a nationally recognized commentator on this area of the law aptly explained:

> The status of the attorney is an important factor in determining the underlying purpose of the communication. For example, the unstated operating presumption in situations involving outside retained counsel with limited responsibilities to the client (e.g., strictly legal capacity as opposed to business responsibilities because of a corporate position that he holds), is that the consultations were held for the purpose of obtaining legal advice or assistance. The same presumption does not apply to in-house counsel because of the many nonlegal responsibilities in-house counsel assumes (whether given a separate position and title or not). (citations omitted)

See Attorney-Client Privilege in the U.S., § 7.1 at 21-22; see also id. at § 7.2, n. 23 (citing Borase for the principle that the presumption of privilege applies when outside counsel without any business responsibilities in involved).

8. The Order cites to the Borase case and its holding concerning situations where an attorney performs "non-legal work." (Order at p. 2, using a "*cf.*" citation signal.) However, that portion of the Borase holding was explicitly limited to situations involving in-house counsel who hold both legal and business responsibilities within a company. (See the Reply Memorandum, Docket Entry # 17, part 2 at pp. 2-3.) The

purpose for which the Order cites Borase is inapposite and is not sufficiently analogous to lend support to the Order.

9. Although the Order cites Rent Control Bd. of Cambridge v. Praught, 35 Mass. App. Ct. 290, 296 (1993), for a general definition concerning the scope of the attorney-client privilege, LocatePlus respectfully submits that the Praught opinion is inapposite because it does not involve the more complex issue of attorney-client privilege in the corporate context. Praught did not involve a situation where, such as here, a corporation engaged outside counsel to provide employment law advice on an ongoing basis *and* to defend it in connection with an investigation by a government agency. Nor did Praught involve the layered attorney-client privilege that exists between a corporate entity and its outside counsel where, such as here, that counsel is required to interview corporate executives.

10. LocatePlus respectfully submits that the Order misinterprets the nature of the conversation Silva alleges to have taken place in Paragraph 9 of his affidavit. Taking Silva's assertions as true, *arguendo*, it is clear from a close reading of his affidavit that the alleged conversation flowed directly from his interview with the EEOC investigators. The alleged statement "this is why you need a real HR department" indicates that Silva and the undersigned were discussing whether deficiencies in LocatePlus's human resources function may have led to the issue that gave rise to the EEOC charge and what steps the company should consider implementing in the future. (See Silva Affidavit ¶ 9, reprinted in LocatePlus's motion to strike at pp. 2-3, Docket Entry # 9.) An important role of outside counsel is to assist its corporate client in learning from mistakes or inadequacies that may become highlighted in litigation. This type of discussion between

a corporate executive and its outside counsel is common in the context of an ongoing litigation, especially in situations where, such as here, the outside counsel is involved in investigating the background of and defending a claim filed against the company and retained to provide day-to-day workplace law compliance advice and guidance in formulating company policies.  See, e.g., Attorney-Client Privilege in the U.S., §§ 7:16, 7:17 (the privilege generally applies to communications relating to investigative services).

11.     In this additional regard, the Order discounts the fact that the undersigned has a longstanding relationship with LocatePlus to provide day-to-day compliance advice.  The undersigned would necessarily and properly consider the issues identified in an EEOC investigation and their impact on existing company policies and practices.  The undersigned respectfully suggests that, because he is retained as outside legal advisor to LocatePlus in connection with its workplace policies and practices, he cannot possibly engage in a non-privileged "casual sharing of complaints about administrative shortcomings in LocatePlus's Human Resources Department" (Order at p. 2) with an executive of the company, as the Order suggests.

12.     Because the alleged communications between Silva and the undersigned were presumptively and actually privileged, it would have been appropriate for the Court to engage in the fairness analysis set forth in LocatePlus's Reply Memorandum at pp. 5-12.  Under that analysis, the communications at issue should be held as privileged because their exclusion would not meaningfully weaken Silva's defense and LocatePlus has not placed its privilege at issue by enmeshing it in Silva's defense.

13. LocatePlus respectfully suggests that a full memorandum of law is unnecessary in light of the reasons articulated above and as set forth in LocatePlus's Reply Memorandum.

**WHEREFORE**, LocatePlus respectfully request that this Honorable Court reconsider its prior ruling and issue an order:

a. Striking Paragraph 9 of Silva's affidavit;

b. Prohibiting Silva and his counsel from attempting to introduce any evidence that is based on privileged conversations in future proceedings; and

c. Granting such other and further relief that this Court feels just and necessary.

Dated: September 23, 2004

Respectfully Submitted,

/s/ Mark M. Whitney
_____
Mark M. Whitney, Esq.
BBO # 637054
**MORGAN BROWN & JOY, LLP**
One Boston Place
Boston, MA 02108
Phone (617) 523-6666
Fax (720) 293-9696
*Counsel for Plaintiff*

### Local Rule 7.1(a)(2) Certification

I hereby certify that I communicated with Charles Hawkins, from the office of Troutman Sanders, Silva's lead counsel, concerning the instant motion on September 17,

2004.  Mr. Hawkins did not assent to the relief requested herein.  Nor were the parties able to narrow the issues addressed by this motion.

/s/ Mark M. Whitney
_____
Mark M. Whitney, Esq.

### CERTIFICATE OF SERVICE

This is to certify that a copy of the foregoing document has been sent by e-mail and regular mail to Mary W. O'Connor, Esq., Gaffin, Krattenmaker & O'Connor P.C., 2400 Prudential Tower, 800 Boylston Street, Boston, MA  02199, on this 23rd day of September, 2004.  A copy of this document was also sent to Charles Hawkins, Esq., defendant's Georgia counsel, by e-mail and regular mail on September 23, 2004.

/s/ Mark M. Whitney
_____
Mark M. Whitney, Esq.